UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIONEL LECHUGA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 12 C 8910 |
| v. | ) | |
| | ) | Chief Judge Rubén Castillo |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Presently before the Court is Petitioner Lionel Lechuga's *pro se* petition to vacate his conviction and set aside his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the Court orders an evidentiary hearing on the factual bases of Petitioner's ineffective assistance of counsel claim.

**RELEVANT FACTS**

The relevant facts relating to Petitioner's criminal conviction are set forth in a published opinion by the Seventh Circuit Court of Appeals, *see United States v. Morales*, 655 F.3d 608 (7th Cir. 2011), and are repeated here only as they pertain to Petitioner's current § 2255 petition.

Petitioner was one of sixteen individuals indicted by a federal grand jury on various racketeering-related charges in 2006. Petitioner and his codefendants were members of the Aurora Deuces, the Aurora, Illinois chapter of the Insane Deuce Nation street gang. Petitioner asserts that he was retired but was pulled back into Deuce activity when the Aurora Deuces underwent a reorganization; the Seventh Circuit stated that contrary evidence indicated that Petitioner had been an active Senior Deuce prior to the reorganization. Petitioner was indicted on charges of racketeering conspiracy (Count One) and conspiracy to distribute narcotics (Count Nine) in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). In an effort not to overwhelm the jury, and due to the logistical challenge of

trying so many defendants in a single courtroom, this Court severed the case into two trials. Petitioner was grouped with the "less major players" and tried before Judge Leinenweber.

Petitioner was represented before and at trial by Patrick Blegen. Petitioner contends that shortly after the commencement of the trial, Mr. Blegen informed him that the government offered a plea agreement in which it agreed to recommend a 15-year sentence. Petitioner alleges that he asked Mr. Blegen whether his prior drug offenses would impact his sentence, and Mr. Blegen advised Petitioner that he was not a career offender under United States Sentencing Guidelines § 4B1.1. Mr. Blegen further advised Petitioner that if he went to trial, any resulting sentence was likely to be lower than 15 years. Mr. Blegen's advice was based on his conclusion that Petitioner was not a career offender and that he would fall into Criminal History Category III or IV. Based on counsel's advice, Petitioner declined the plea agreement. Petitioner was under the impression that his Adjusted Guidelines Base Offense Level would be 19, which resulted in a Sentencing Guidelines range of 46-57 months based on a Criminal History Category of IV.

On December 10, 2008, after a three-month trial, a jury found Petitioner guilty on both counts. Following the trial, the pre-sentence investigation report designated Petitioner as a career offender based on two prior drug convictions and the conviction on Count Nine. The investigation report allotted Petitioner 20 criminal history points and placed him in Criminal History Category VI. Petitioner's enhanced offense level was 43, resulting in a Sentencing Guidelines recommendation of a life sentence. On September 3, 2009, Petitioner was sentenced to a 20-year term of imprisonment and three years of supervised release on Count One and a 20-year term of imprisonment and six years of supervised release on Count Nine, to run concurrently.

He filed his notice of appeal, challenging both his conviction and his sentence, on September 11, 2009. The Seventh Circuit affirmed both.[1] *Morales*, 655 F.3d at 640-44. The Seventh Circuit held, as relevant to Petitioner, that (1) the district court's failure to state its reasons on the record for granting the government's motion for an anonymous jury empanelment was harmless error; (2) the district court did not abuse its discretion in declining to further sever the proceedings; (3) the district court did not abuse its discretion when it denied the defendants' motion for a hearing based on alleged juror misconduct; (4) a rational jury could find that the government's evidence disproved Petitioner's withdrawal defense; (5) the district court did not err in finding that Petitioner's coconspirators' violent acts were relevant to his racketeering offense for sentencing purposes; and (6) the district court did not err in determining that Petitioner was a career offender. Petitioner now raises this timely collateral attack to his sentence[2] and argues that his attorney rendered ineffective assistance of counsel with regards to the prosecution's plea offer and the ensuing plea negotiations.

## LEGAL STANDARD

Section 2255 allows an incarcerated prisoner to request his sentence be vacated on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "[R]elief under 28 U.S.C. § 2255 is limited to an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a

---

[1] The Seventh Circuit also affirmed the convictions and sentences of Petitioner's codefendants.

[2] The Seventh Circuit affirmed Petitioner's conviction on August 18, 2011, and Petitioner's § 2255 motion was postmarked October 31, 2012. Petitioner's petition is therefore timely because it was postmarked within one year of the expiration of the 90-day time period to file a petition for certiorari following his appeal. *See Clay v. United States*, 537 U.S. 522, 532 (2003).

complete miscarriage of justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal quotation marks omitted)). "The court should grant an evidentiary hearing on a § 2255 motion when the petitioner 'alleges facts that, if proven, would entitle him to relief.'" *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009) (quoting *Hall v. United States*, 371 F.3d 969, 972 (7th Cir. 2004)).

## ANALYSIS

Petitioner argues that he received ineffective assistance of trial counsel because his attorney, Patrick Blegen, failed to properly advise him during plea negotiations. (R. 1, Pet'n at 10.) The Sixth Amendment of the Constitution guarantees criminal defendants the right to effective assistance of counsel, "a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). To establish ineffective assistance of counsel, Petitioner must show that his counsel was deficient and that this deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985) ("the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel"). Petitioner must establish both elements to succeed on his ineffective assistance claim. *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010) (citing *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)).

**I.      Whether counsel's performance was deficient**

Petitioner argues that Mr. Blegen's performance was deficient because he failed to properly advise Petitioner that a conviction on Count One could result in Petitioner being held liable for four murder and ten attempted murder charges under the RICO conspiracy and that Petitioner was facing career offender status and a 20-year mandatory minimum. (R. 1, Pet'n at

4

8.) Petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This is a high bar, and the Court will not "question the objectively reasonable strategic decisions of counsel." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990) (citing *Strickland*, 466 U.S. at 690). In the context of advice concerning a plea agreement, "[a] reasonably competent attorney will attempt to learn all of the facts of the case, make an estimate of the likely sentence, and communicate the result of that analysis." *Julian v. Bartley*, 495 F.3d 487, 495 (7th Cir. 2007). Although "a mistaken prediction is not enough in itself to show deficient performance, . . . [a] gross mischaracterization of the sentencing consequences of a plea may provide a strong indication of deficient performance." *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996). A petitioner "can prove that his attorney's performance was deficient if he shows that his attorney did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him." *Id.*; *see also Julian*, 495 F.3d at 496. To that end, the Court's analysis of the first prong of the *Strickland* test focuses on Mr. Blegen's efforts to discover all the pertinent facts and his analysis of the facts and relevant Sentencing Guidelines.

The government seems to suggest that because defendants have no constitutional right to be offered a plea agreement, defense counsel only has the duty to communicate formal plea offers to the defendant. (R. 9, Gov't's Resp. ¶ 3) (quoting *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012)). Accordingly, the government contends that Petitioner's failure to allege that the government extended a formal, approved plea offer to him undermines his claim. (R. 9, Gov't's Resp. ¶ 6.) This is a misreading of *Missouri v. Frye*, which stated that "plea bargains have become so central to the administration of the criminal justice system that defense counsel have

5

responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." 132 S. Ct. at 1407. The Supreme Court went on to acknowledge the difficulty in determining whether a defense counsel's performance in the plea negotiation process is sufficient before stating that the case before it presented "neither the necessity nor the occasion to define the duties of defense counsel in those respects." *Id.* at 1408. On the narrow question that was before the Court, it held that counsel's failure to inform the defendant about a formal plea offer was clearly deficient. *Id.* This holding does not translate into a requirement that a petitioner must receive a formal plea offer in order to establish ineffective assistance during plea negotiations. Defendants are entitled to effective assistance at all stages of the plea negotiation, and ineffective assistance at an early stage could prevent a formal offer from being made. *See id.* at 1407-08 ("[C]riminal defendants require effective counsel during plea negotiations. Anything less might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him.") (quoting *Massiah v. United States*, 377 U.S. 201, 204 (1964) (internal alterations and quotation marks omitted)). Petitioner's failure to attach a formal plea agreement to his petition does not undermine his claim that he was denied effective assistance of counsel during the early stages of the plea negotiation process.

Petitioner argues that counsel was deficient because he failed to inform Petitioner during plea negotiations that Petitioner's prior drug offenses would qualify him as a career offender under U.S.S.G. § 4B1.2(b). (R. 1, Pet'n at 11.) The government and Petitioner disagree as to when Mr. Blegen became aware of Petitioner's second drug conviction, which rendered him a career offender. Petitioner contends that Mr. Blegen was aware of at least one of Petitioner's prior drug offenses because on December 11, 2007, the government filed a notice that it would

6

seek to increase Petitioner's potential mandatory minimum sentence applicable to the drug conspiracy to 20 years pursuant to 21 U.S.C. § 851(b). The government argues that neither it nor Mr. Blegen had knowledge of Petitioner's *second* felony drug conviction, which rendered him a career offender, until the probation office issued the presentence report. (R. 9, Gov't's Resp. ¶ 11.) Even if the government is correct, however, Mr. Blegen's ignorance of his client's criminal record does not excuse him from rendering effective assistance during plea negotiations.

Although there is no exhaustive list of defense counsel's obligations, "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable." *Strickland*, 466 U.S. at 688. The ABA standards state that "[d]efense counsel should not recommend to a defendant acceptance of a plea unless appropriate investigation and study of the case has been completed." ABA Standards for Criminal Justice Pleas of Guilty, Standard 14-3.2(b) (3d Ed. 1999). The accompanying commentary clarifies that "it is defense counsel's responsibility to investigate not only the facts concerning the offense, but also facts that go to the defendant's potential sentence, including his or her prior record." *Id.*, Commentary on Standard 14-3.2(b), p. 123. While counsel has wide latitude to make strategic decisions, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Mr. Blegen had the responsibility to investigate Petitioner's criminal record independently from the presentence report, and a failure to do so may constitute deficient performance. *See Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

The government attempts to undermine Petitioner's claim of ineffective assistance by arguing that it is "highly improbable" that Mr. Blegen would have advised Petitioner that any sentence he received after trial was likely to be less than 15 years after Mr. Blegen received the §

7

851(b) notice. (R. 9, Gov't's Resp. ¶ 9.) At sentencing, however, Mr. Blegen stated that he did not know Petitioner was a career offender during the trial. (Sent. Tr. at 85:3-5.) Mr. Blegen stated that if he had known Petitioner was a career offender, he "would have stood on his neck to get him to take the deal." (*Id.* at 85:16-18.) At the very least, Mr. Blegen's comment at sentencing raises doubts as to the sufficiency of his factual investigations prior to plea negotiations such that this Court cannot say that "the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255. The government's skepticism that "an experienced defense attorney like Mr. Blegen" would have rendered the advice Petitioner alleges only reinforces the Court's conclusion that if Mr. Blegen did indeed render such advice his counsel was constitutionally ineffective. Thus this Court concludes that an evidentiary hearing is necessary to determine the veracity of Petitioner's claim.

Petitioner also argues that counsel was deficient because he told Petitioner during plea negotiations that Petitioner would not be held accountable for the violent act of his codefendants. (R. 1, Pet'n at 13.) Petitioner contends that Mr. Blegen failed to sufficiently research and analyze RICO law, and that this failure led to Petitioner's underestimation of his potential sentence. (*Id.* at 15.) Although a miscalculation of the applicable Sentencing Guidelines range is not typically deficient performance, a failure to effectively analyze applicable law and its effect on a defendant's potential sentence is deficient performance. *See, e.g.*, *Welch v. United States*, 604 F.3d 408, 412 (7th Cir. 2010) (defense counsel's determination that defendant did not qualify for the Armed Career Criminal Act sentencing enhancement resulted in a miscalculation of a statutory minimum sentence and was therefore deficient performance); *Julian*, 495 F.3d at 497 (defense counsel's failure to analyze *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and to accurately advise defendant as to the effect *Apprendi* would have on his sentence was deficient

8

performance). Accordingly, Mr. Blegen's failure to properly advise Petitioner that he could be held liable for his codefendants' violent acts under RICO, 28 U.S.C. § 1962(d), if true, may provide another basis for Petitioner's ineffective assistance of counsel claim.

## II. Whether Petitioner was prejudiced

Petitioner argues that Mr. Blegen's alleged failure to correctly advise him during plea negotiations prejudiced him by resulting in five additional years of incarceration. (R. 1, Pet'n at 17.) "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 132 S. Ct. at 1409. "Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Id.* Finally, the defendant must demonstrate that acceptance of the plea offer would have resulted in a less severe sentence than was in fact imposed. *Lafler*, 132 S. Ct. at 1385. The Seventh Circuit requires a petitioner to present objective evidence that he was prejudiced. *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (citing *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005)). "Objective evidence includes the nature of the misinformation provided by the attorney to the petitioner and the history of plea negotiations." *Id.*

The government argues that Petitioner cannot meet either of the first two requirements of the prejudice prong of the *Strickland* test. The government argues that "although a potential plea agreement was discussed with defense counsel, the trial team did not obtain the approval of the United States Attorney . . . to actually enter into any plea agreement" with Petitioner. (R. 9, Gov't's Resp. ¶ 7.) Similar to the government's argument above that Petitioner's claim is

invalid because he cannot produce a formal offer, this argument fails to account for the circumstances of this case. Petitioner alleges that he rejected the plea offer in early stages of negotiation, providing no reason for the government to seek approval to make a formal offer. (R. 1, Pet'n at 3.) Petitioner alleges, however, that the government and the Court were willing to abide by the terms of the plea agreements, and he attaches the plea agreements and sentences of two of his codefendants to support his claim. (R. 1, Pet'n at 17-18; Ex. 1, Landeros Plea Agreement; Ex. 2, Horton Plea Agreement.) Specifically, Petitioner submits Akeem Horton's plea agreement, in which the parties agreed to, and the Court imposed, a sentence of 195 months. The Sentencing Guidelines range for Horton was 292 to 365 months.

The government argues that during plea negotiations, Petitioner refused to agree to provide a full and truthful proffer about his activities with the Insane Deuces, a requisite condition of any proposed plea agreement. (R. 9, Gov't's Resp. ¶ 8.) Consequently, the government contends that the fact that the government entered plea agreements with Petitioner's codefendants is irrelevant, and Mr. Blegen's allegedly deficient advice did not prejudice Petitioner, because Petitioner "cannot establish that the government would have entered into any plea agreement without that specific term." (*Id.*) The government overlooks the basis of Petitioner's argument: that he would not have rejected the government's plea offer and might have provided the required proffer if he had been fully informed as to the "extent of the monumental sentencing risk he was taking by continuing with the trial." (R. 14, Pet'r's Reply at 10.) The type of legally erroneous advice Petitioner alleges he received from Mr. Blegen is "precisely the type of information that is likely to impact a plea decision" and that the Seventh Circuit has found to be prejudicial. *Moore v. Bryant*, 348 F.3d 238, 242-43 (7th Cir. 2003) (finding prejudice where defendant was eligible for 12-and-a-half to 15 years of incarceration if

he lost at trial but accepted a plea bargain agreeing to serve 10 years after defense counsel told him he would receive 22 to 27 years if he lost at trial); *see also Julian*, 495 F.3d at 498-99 (finding prejudice where defendant was eligible for a 60-year sentence but defense counsel advised defendant that the maximum sentence he could receive was 30 years of incarceration, defendant rejected a 23-year plea agreement and went to trial based on counsel's advice, and defendant was sentenced to 40 years of incarceration after being convicted at trial).

Petitioner has thus alleged facts that, if true, demonstrate that he would have accepted the earlier plea offer if he had received effective assistance of counsel, and that there is a "reasonable probability" that the prosecution would not have cancelled it and the trial court would have followed the recommendation within the plea agreement. Petitioner has sufficiently established that the proposed plea agreement contained a recommended sentence of 15 years, which is significantly less severe than the 20-year sentence he received after trial. Because the government contests the accuracy of Petitioner's allegations, an evidentiary hearing is appropriate to determine the factual basis of the prejudice prong of the *Strickland* test.

The Court finds that an evidentiary hearing is required to resolve both the performance and the prejudice prongs of Petitioner's ineffective assistance claim.

## CONCLUSION

For the foregoing reasons, the Court will hold an evidentiary hearing on the merits of the petition. The Court appoints Alison Siegler of the University of Chicago Law School Mandel Clinic to represent Petitioner in this matter. The parties are to appear for a status hearing on February 12, 2014 at 9:45 a.m. and should be prepared to address the proposed scope and date of the evidentiary hearing.

ENTERED: _____

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: January 14, 2013**